866 F.2d 1416
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Benneth AGBODIKE, Defendant-Appellant.
 No. 88-5130.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Nov. 30, 1988.
Decided: Jan. 30, 1989.
 
 G. Godwin Oyewole for appellant.
 Henry E. Hudson, William G. Otis, Bonnie S. Greenberg, Office of the United States Attorney, for appellee.
 Before WILKINSON and WILKINS, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Benneth Agbodike appeals his conviction of possession of heroin with intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1). Agbodike pled guilty with the understanding that he would later appeal the denial of his motion to suppress evidence presented against him. We affirm.
 
 
 2
 On May 12, 1988, Drug Enforcement Task Force Detective Floyd Johnston was informed by an agent of the Drug Enforcement Agency that a suspected drug courier had flown from Washington, D.C., to Indianapolis and was expected to return to Washington National Airport on U.S. Air later that day with a pound of heroin. The suspect was described as a black male named Benneth A. Agbodike, over six feet tall, weighing over two hundred pounds, dressed in black pants and shoes, a grey pullover or shirt and carrying a small black bag.
 
 
 3
 When he arrived at the airport, Johnston checked the passenger list of a U.S. Air flight which had gone to Indianapolis earlier that day. No "Agbodike" was listed, but Johnston noticed a passenger named "A. Azuka."
 
 
 4
 Johnston monitored all U.S. Air flights arriving from Indianapolis that day. One of the last passengers to get off the last flight was a tall, heavy, black male wearing black pants, black shoes and a grey pullover shirt. He was the only black person on the flight; however, he was not carrying a black bag.
 
 
 5
 Johnston approached the suspect in the hall adjoining the arrival gate, identified himself as a police officer (he was not in uniform) and asked the suspect if he could speak with him for a minute. The suspect said, "Sure," and, in response to Johnston's questions, showed the detective his ticket, which was in the name of "A. Azuka," and identification in the form of a credit card with the name "Benneth Agbodike." When asked why the names were different, Agbodike did not respond. Questioned further, he stated that he lived in Indianapolis, but was coming home to Washington. Johnston then explained that his job was to interdict narcotics coming into Washington, and asked Agbodike if he was carrying any narcotics. Agbodike said he was not and agreed to a search of his person, which revealed no narcotics.
 
 
 6
 As Agbodike's ticket had a baggage claim stub, Johnston asked whether Agbodike would mind having the detective walk to the baggage claim with him and search his bag. Agbodike said, "Sure. Let's go."
 
 
 7
 While they were waiting for the bags to appear, Agbodike said he wanted to make a phone call. Johnston first asked him to wait until he had looked at the bag, but when Agbodike repeated that he needed to make a call, Johnston pointed out the nearest phones and asked Agbodike if he wanted the bag picked up when it came. Agbodike said he did, and gave Johnston the baggage claim stub. Johnston collected a black bag with the matching ticket and took it to Agbodike who looked at it when he finished his call and said it was not his. In the bag Johnston found a plastic bag containing heroin. Agbodike was then arrested.
 
 
 8
 After a suppression hearing at which Detective Johnston testified, the district court concluded that no seizure had taken place until Agbodike's arrest. This determination is essentially factual and will be upheld unless it is clearly erroneous. United States v. Gooding, 695 F.2d 78, 82 (4th Cir.1982).
 
 
 9
 On appeal, Agbodike contends that he was arrested when Detective Johnston first approached and asked to speak to him. We find that the encounter was initially consensual, as the officer did nothing--until Agbodike first said he wanted to make a phone call--which would, objectively viewed, have caused Agbodike to believe he was not free to leave if he chose. United States v. Mendenhall, 446 U.S. 544, 553-54 (1980); Florida v. Royer, 460 U.S. 491, 497 (1983).
 
 
 10
 The detective had a detailed description from an informant of a named suspect who would arrive that day on U.S. Air from Indianapolis carrying heroin. When he saw a man meeting the description get off a U.S. Air flight from Indianapolis and determined that his name was Agbodike, Johnston at that point had probable cause to arrest. United States v. Porter, 738 F.2d 622, 625-26 (4th Cir.), cert. denied, 469 U.S. 963 (1984). See also Draper v. United States, 358 U.S. 307 (1959). The minimal restriction that occurred later when Johnston initially asked Agbodike to wait a few minutes to make his phone call was not, therefore, an illegal detention.
 
 
 11
 We dispense with oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. We affirm the district court's order denying Agbodike's motion to suppress the evidence seized, and we affirm his conviction.
 
 
 12
 AFFIRMED.